UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KURT ENZ, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Case No. 4:20-CV-00050-SPM |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Kurt Enz, Jr. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 5). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

## I. STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support

1

the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**II.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT**

To be eligible for DIB, a claimant must prove the existence of a disability under the Act. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines as a disability an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

### III.   PROCEDURAL BACKGROUND

On May 24, 2016, Plaintiff filed an application for DIB. (Tr. 193-94). On August 16, 2016, Plaintiff's claim was denied. (Tr. 131-35). On September 8, 2016, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 138-39). On May 2, 2018, the ALJ held a hearing on the ALJ's claims. (Tr. 85-118). On February 5, 2019, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. (Tr. 70-84). Applying the foregoing five-step analysis, the

4

ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2022; that Plaintiff had not engaged in substantial gainful activity since August 1, 2014, the alleged onset date; that Plaintiff had the severe impairments of central retina vein occlusion in the right eye and end-stage neo-vascular glaucoma in the left eye; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 75-76). The ALJ found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he cannot climb ladders, ropes, or scaffolds. He should avoid operational control of moving machinery. He is limited to work with no depth perception. His job should not require putting small objects in holes or slots. He should not work in a dim environment. He should wear safety glasses at all times in the workplace. He cannot perform work that requires him to read less than a 16-point font.

(Tr. 76). At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 78). At Step Five, relying on the testimony of a vocational expert ("VE"), the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including representative occupations such as dining room attendant (Dictionary of Occupational Titles ("DOT") Number 311.677-018; 59,537 jobs in the national economy). (Tr. 79). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from August 1, 2014, through the date of the decision. (Tr. 80). Plaintiff requested review by the Appeals Council of the Social Security Administration, but on November 26, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). The decision of the ALJ stands as the final decision of the Commissioner.

## IV.    VOCATIONAL EVIDENCE[1]

Vocational Expert ("VE") Dolores Gonzalez testified at the hearing before the ALJ. (Tr. 85-18). The VE's curriculum vitae, which was in the record before the ALJ, shows that at the time of the hearing, shows the VE had several decades of experience working in vocational rehabilitation counseling, was a certified vocational expert for the Social Security Administration, had several other relevant certifications, and had an M. Ed. in Vocational Rehabilitation Counseling. (Tr. 108, 290-93). Plaintiff's attorney did not have any objection to Ms. Gonzalez testifying as a VE. (Tr. 108-09).

At the hearing, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience, with the following limitations: no exertional limitations; should never climb ladders, ropes or scaffolds; should avoid unprotected heights, should avoid exposure to hazardous machinery; should avoid moderate exposure to operational control of moving machinery; would be limited to occupations requiring no peripheral acuity on the left side, no depth perception, only occasional near acuity; only occasional far acuity; and should not require reading as not a primary requirement of the job. (Tr. 110-12). The VE testified that such an individual could not perform Plaintiff's past work. (Tr. 112-13). The ALJ then asked whether such an individual could perform any other jobs, at the medium exertion level, that exist in the national economy. (Tr. 113). The VE testified that the jobs of dining room attendant (DOT No. 311.677-018, medium, unskilled) and hand packager (DOT No. 920.587-018, medium, unskilled) would be available. (Tr. 113). No jobs would be available at the light or sedentary levels. (Tr. 113). The

---

[1] Because Plaintiff challenges only the ALJ's findings at Step Five of the five-step process, the Court focuses primarily on the background facts relevant to the ALJ's Step Five findings.

6

VE testified that this evidence did not conflict with the information contained in the DOT. (Tr. 114).

On questioning by Plaintiff's attorney, the VE testified that the job of hand packager required occasional depth perception and acknowledged that that job would be precluded if the hypothetical individual had no depth perception; only the dining room attendant job would be left. (Tr. 115-16). Plaintiff's attorney and the VE then had the following exchange:

> Q. If—with the dining room attendant, if he was limited in his right eye, peripherally, to 45 degrees, meaning, you know, he—see out front and then 45 degrees to the right, would that affect his ability to do that job?
>
> A. Well, the DOT says that, that the depth perception's not, not present. But, I think that it might be difficult for the person to navigate through a cafeteria or restaurant, you know.
>
> Q. Just—yeah. Just to, to get to the tables and get to the things that he has to.
>
> A. Or even, work, you know, go into a kitchen and come out with trays or whatever.
>
> Q. Right.
>
> A. It might be difficult and it might be dangerous.
>
> Q. Right. Okay. All right. I think that's all I had.
>
> ALJ. And, what's that based on?
>
> A. On my experience in watching people drop trays and stuff and drop trays on people.

(Tr. 116-17).

Several months after the hearing, on August 22, 2018, the ALJ sent interrogatories to Ms. Gonzalez, which she completed on August 23, 2018. (Tr. 305-09). On the check-box form, Ms. Gonzalez noted that she had reviewed the evidence related to Plaintiff's vocational background and that there was sufficient evidence to allow her to form an opinion of the claimant's vocational status. (Tr. 306). The interrogatory then described the following hypothetical individual:

7

> Assume a hypothetical individual who was born on June 2, 1956, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in your response to question #6. Assume further that this individual has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can never climb ladders, ropes or scaffolds. He should avoid operational control of moving machinery, unprotected heights and exposure to hazardous machinery. He is limited to work with no depth perception. His job should not require putting small objects in holes or slots. He should not work in a dim environment. He should wear safety glasses at all times in the work place. He can not perform work that requires him to read less than 16 point font.

(Tr. 307). When asked whether such an individual could perform any of Plaintiff's past jobs as actually performed by Plaintiff or as generally performed in the national economy, Ms. Gonzalez responded, "No." (Tr. 307). When asked whether such an individual could perform any unskilled occupations with jobs that exist in the national economy, she responded, "Yes." (Tr. 308). When asked to provide the DOT Title, Code, and SVP time, as well as the number of jobs that exist in the national economy, Ms. Gonzalez identified three jobs: housekeeping cleaner (DOT Number 323.687-014, SVP-2, 133,393 jobs); dining room attendant (DOT Number 311.677-018, SVP-2, 59,537 jobs; and collator operator (DOT Number 208.685-010, SVP-2, 13,351 jobs). (Tr. 308). Asked whether there were any conflicts between the occupational evidence she provided and the occupational information in the DOT and/or the SCO, she responded, "No." (Tr. 309).

## V. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed for one reason: that the Defendant failed to meet his burden at Step Five. At Step Five, it is the Commissioner's burden to "identify the types of jobs [a claimant] could perform notwithstanding his disabilities" and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1)). *See also Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). "For

guidance on such questions, ALJs often seek the views of 'vocational experts.'" *Biestek*, 139 S. Ct. at 1152. Vocational experts "are professionals under contract with [the Social Security Administration] to provide impartial testimony in agency proceedings." *Id.* "They must have expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs.'" *Id.* (internal quotation marks and alterations omitted). "Many vocational experts simultaneously work in the private sector locating employment for persons with disabilities." *Id.* "When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Id.* at 1152-53 (quoting Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2). It is well established that "[t]he Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). "A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011) (internal quotation marks omitted).

Here, Plaintiff argues that the VE's testimony does not support a finding that a person (such as Plaintiff) who has no depth perception could perform the job of dining room attendant. Plaintiff's interpretation of the record is that the VE gave internally contradictory testimony—that she testified initially that a person with no depth perception could perform the job of dining room attendant; then testified on cross-examination that a person with no depth perception could *not* perform the job of dining room attendant, because it "might be difficult and might be dangerous";

9

and then provided interrogatory responses months later indicating that a person with no depth perception *could* perform that job, without explaining the discrepancy (Tr. 116). Plaintiff also argues that the ALJ did not explain his decision to send interrogatories to the VE after the hearing to ask the same question he asked at the hearing, and that the ALJ did not ask the VE to explain the discrepancy between her hearing testimony and the answer to the interrogatories. Plaintiff argues that the Court should defer to the credible testimony from the VE that a person with no depth perception cannot sustain the job of dining room attendant, because it is too difficult and too dangerous for someone with no depth perception. In the alternative, Plaintiff suggests that the Court should remand the case for clarification from the ALJ regarding why he did not credit this testimony.

Defendant's interpretation of the record, on the other hand, is that when the VE testified that the job of dining room attendant "might be difficult" and "might be dangerous," that testimony was in response to a question in which Plaintiff's attorney had asked the VE to assume an additional limitation not included in the original hypothetical question posed by the ALJ or the interrogatories later submitted: a limitation to seeing only 45 degrees peripherally in the right eye. Under the Defendant's interpretation of the record, the VE consistently indicated that a hypothetical individual with no depth perception, but *without* that additional limitation, could perform the job of dining room attendant.

Upon careful review of the transcript of the hearing before the ALJ and the ALJ's decision, the Court finds that Defendant's interpretation of the record is the more reasonable one. The VE testimony that the dining room attendant job would be difficult and dangerous was *not* made in response to a question about a hypothetical individual who simply had no depth perception, along with Plaintiff's other limitations reflected in the RFC. Instead, it was made in response to a

question about a hypothetical individual who had another limitation set forth by Plaintiff's counsel: "if he was limited in his right eye, peripherally, to 45 degrees, meaning, you know, he—see out front and then 45 degrees to the right." (Tr. 116). That limitation was not present in the initial hypothetical question posed to the ALJ, nor was it present in the interrogatory sent to the ALJ after the hearing. It also is not included in the RFC finding. Moreover, a review of the ALJ's decision shows that he considered and rejected that limitation when determining the RFC: after giving significant weight to some of Plaintiff's claimed vision limitations, the ALJ found "there is nothing in the objective evidence showing the claimant's right field of vision has reduced to 45 degrees." (Tr. 78). Plaintiff does not challenge the RFC finding.

In sum, the Court finds that the ALJ properly included all the limitations he found supported by the record in the hypothetical question he posed to the VE, and the VE indicated that such an individual could perform work existing in significant numbers in the national economy. Thus, the ALJ's finding at Step Five was supported by substantial evidence.

### VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of January, 2021.